# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE UNDERWOOD, | : | Civil No. 1:19-CV-01634 |
| Plaintiff, | : | |
| v. | : | |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Presently before the court is Commonwealth Defendants' unopposed motion to dismiss Plaintiff Dwayne Underwood's civil rights complaint filed pursuant to 42 U.S.C. § 1983. (Doc. 13.) Underwood, a federal prisoner at the time of filing his complaint, was not in custody pursuant to the Pennsylvania Board of Probation and Parole's ("the Board's") parole warrant. As such, his demands for a parole revocation hearing were premature and his due process rights did not attach. Accordingly, the court will grant Commonwealth Defendants' motion to dismiss without leave to amend as any amendment would be equally futile.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Dwayne Underwood ("Plaintiff" or "Underwood") filed this civil rights matter on September 20, 2019, while in federal custody at the Schuylkill

Federal Correctional Institution in Minersville, Pennsylvania.[1]  (Doc. 1, p. 11.)[2] Named as Defendants are the Board, Governor Wolf, and the following Board employees: Victor W. Wills, Kay Longenberger, Morgan C. Davis, Judith B. Selvey, A. Rivera, M.C. Kelly, and D. Gianoni.  (*Id.*, p. 11.)  Underwood sues each defendant exclusively in his or her official capacity.  (*Id.*, pp. 2–3, 12–14.)

In 1994, Underwood, also known as Derrick Royal, was convicted for conspiracy to commit robbery in the Philadelphia County Court of Common Pleas and sentenced to 1 to 15 years' imprisonment.  (*Id.*, pp. 14–15.)  He was paroled from this sentence on April 14, 1998.  (*Id.*)  While on parole, Underwood was arrested on May 18, 1999, for aggravated assault, firearm possession, and possession of a controlled substance.  Although the firearm and drug charges were withdrawn, Underwood faced trial on the assault charge.  In the interim, Underwood was arrested in November 1999 by federal authorities for felony possession of a firearm and drug trafficking.

---

[1] Underwood was release from federal prison on December 17, 2019.  *See* https://www.bop.gov/inmateloc/ (search: Dwayne Underwood, last visited March 19, 2021).  He is presently a state inmate incarcerated at the Mahanoy State Correction in Frackville, Pennsylvania.  *See* http://inmatelocator.cor.pa.gov/#/ (search: Dwayne Underwood, last visited March 19, 2021.)  Although Dwayne Ronald Underwood is Plaintiff's true name, for identification purposes within the state, his commitment name, and the name to be used on all mailings, is Derrick Royal.  (*Id.*)

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Underwood was tried on the federal charges first. He was convicted of all charges and received a 22½ year sentence. He was then tried and convicted on the assault charge. He received a 5 to 10-year sentence that was imposed to run concurrently with his federal sentence. (*Id*., p. 14.) Prior to his state trial, but after his federal conviction January 2000, the Board issued a warrant for Underwood's arrest as a paroled prisoner. (*Id*., pp. 14, 19.) Following his assault conviction, Underwood was returned to federal custody to complete his sentence. In July 2000, the Board lodged a detainer against Underwood with the Bureau of Prisons ("BOP") and directing his return to state custody following service of his federal sentence. (*Id*., p. 14.)

Since that time, and while in federal custody, Underwood repeatedly asked the Board to conduct his parole revocation hearing. In his complaint, Underwood argues that from November 9, 1999 (the date he was arrested by federal authorities) through July 29, 2000 (the date of the Board's detainer), the Board failed to provide him with a timely revocation hearing in violation of his Due Process rights. (*Id*., p. 16.) He argues that while in federal custody, he was thrice released to state authorities on writ to appear in state court on his assault charges and the Board failed to provide him a revocation hearing during this time. He adds that each time he remained in state custody for several months and the Board failed to provide him with a timely revocation hearing. (*Id*., pp. 17–18.)

3

Additionally, Underwood wrote to Governor Wolf and members of the Board seeking to lift the parole detainer and recalculate his original sentence. In August 2009 and September 2013, Judith B. Selvey, a Parole Staff Technician responded to letters from Underwood. In each, she advised him that upon his release from federal custody, he would be afforded a revocation hearing. (*Id.*, pp. 33–34.) D. Gianoni, a Parole Staff Technician responded similarly to a request from Underwood on July 18, 2014. (*Id.*, p. 35.) M.C. Kelly, also a Parole Staff Technician, addressed a July 7, 2015 letter from Underwood requesting to lift his detainer. (*Id.*, p. 36.) On October 3, 2017, A. Rivera, Parole Staff Technician, responded to an inquiry from Underwood seeking the scheduling of his revocation hearing. (*Id.*, p. 22.)

In March 2018, Victor W. Wills responded to a letter Underwood's mother wrote to Governor Wolf concerning the scheduling of a parole revocation hearing for her son. (*Id.*, p. 23.) In response to Underwood's mother's letter to Governor Wolf, Wills responded that Governor Wolf "does not have the authority to grant parole, evaluate, or influence decisions made by the Board" and that a revocation hearing would be held upon his release from federal custody and once he is "available to the Board." (*Id.*, p. 21.) Assistant Counsel Morgan Davis of the Governor's Office of General Counsel addressed multiple letters from Underwood on May 15, 2019. (*Id.*, p. 20.) Davis advised that, until his release from federal

4

custody, he would not be recommitted as a convicted parole violator. (*Id.*) A month later, Kay Longenberger, Parole Manager, responded to a letter from Underwood. She advised he would "be afforded appropriate due process upon [his] physical return to a PA Department of Corrections facility. At this time, [he] was not available to the Board." (*Id.*, p. 37.)

Underwood claims the Commonwealth Defendants violated his Due Process rights by failing to provide him with a parole revocation hearing prior to his release from federal custody. Underwood seeks monetary damages for his injuries which are limited to "mental anguish." (*Id.*, p. 5.)

## JURISDICTION

This court has jurisdiction over Underwood's 42 U.S.C. 1983 action pursuant to 28 U.S.C. § 1331 which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

A complaint filed by a self–represented plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Yet, even a self–represented plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Self-represented plaintiffs are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir.

2014).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. The Pennsylvania Board of Probation and Parole is Entitled to Sovereign Immunity.

Plaintiff may not maintain a Section 1983 action against the Board.  As a general rule, "regardless of the nature of the relief sought," the states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. and Indus.*, 985 F.3d 189, 193 (3d Cir. 2021). In addition, the Commonwealth of Pennsylvania, acting through the Board, is not a "person" who may be sued under Section 1983 for money damages.  *See Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 956 n. 2 (3d Cir. 2019) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70–71 (1989)).  Therefore, the court dismisses all claims against the Board with prejudice.

### B. Underwood Failed to Allege the Personal Involvement of the Individual Defendants.

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fishser*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs … Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207–08. Such allegations, however, must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and personal responsibility. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207–08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his right is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Underwood argues that while he was in federal custody in Pennsylvania, the Board failed to provide him with a timely revocation hearing in violation of his due process rights. (Doc. 1, p. 16.) Yet, according to Underwood, the earliest date of involvement of any of the individual Commonwealth Defendants is alleged to have taken place in 2009, several years after the Board lodged its warrant and detainer

with federal authorities.  *See Id.*, pp. 20–37.  Such "after–the–fact" involvement of a review of a letter does not establish the "personal involvement" of the defendant in the underlying deprivation.  *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievance generally does not satisfy the requisite personal involvement.") (citing *Rode*, 845 F.2d at 1207–08).  In each letter Underwood attaches to his complaint, there is no evidence that the responding Defendant had the knowledge or ability to act on behalf of the Board with respect to the scheduling of his parole revocation hearing at any point in time, including Governor Wolf.

    For example, Underwood's complaint suggests that he wrote to Governor Wolf in 2009 concerning his desire to have his parole detainer lifted and his parole revocation scheduled prior to his release from federal custody, but long after the Board's alleged unconstitutional actions.  However, Underwood does not allege that Governor Wolf knew of the Board's 2000 actions regarding Underwood or had the authority to alter their position.  It is well established that personal liability under Section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *Rode*, 845 F.2d at 1207.  Thus, absent more specific allegations as to each Commonwealth Defendants' personal participation in the Board's decision to withhold his parole revocation hearing until he was released

9

from federal authorities, Underwood fails to allege their personal involvement in the allegedly unconstitutional decision.

### C. Underwood Fails to State a Due Process Claim Attendant to the Parole Warrant or Delay in Parole Revocation Hearing while in Federal Custody.

A parolee facing revocation of parole has a constitutional liberty interest in his freedom, despite its conditional and qualified nature. *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972) (specifying minimum due process requirements for parole revocation). Due process requires that a parole revocation hearing be held "within a reasonable time after the parolee is taken into custody." *Id.*, 408 U.S. at 488. However, where a parolee is in custody for crimes committed on parole, these due process protections do not apply (with regards to the parole revocation process), until the parole warrant is executed, and he is taken into custody as a parole violator. *Moody v. Daggett*, 429 U.S. 78, 87 (1976); *see also United States v. Thomas*, 801 F. App'x 846, 947–48 (3d Cir. 2020).

Here, Underwood is clear that he was in federal custody serving a federal sentence when he made demands for a state parole revocation hearing. Consistent with *Moody*, Underwood was advised that upon completion of his federal sentence, and the execution of the parole warrant, he would be returned to a Pennsylvania state facility where he would receive a parole revocation hearing. Until his release from federal custody, Underwood's denial of liberty was the result of his federal

conviction or other charges, and not the parole violation warrant. Accordingly, the due process protections of *Morrissey* were "not yet triggered." *Thomas*, 801 F. App'x at 847. For these reasons, Underwood's complaint will be dismissed without leave to amend as he fails to state a claim for which relief may be granted.

## CONCLUSION

For the foregoing reasons, the court will grant the Commonwealth Defendants' motion to dismiss and dismiss the complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Dated: March 30, 2021                Middle District of Pennsylvania